165 So.2d 709

Fritz P. OWENS

v.

Rubye Cox WILLIAMS et al.

5 Div. 787.

Supreme Court of Alabama.

June 18, 1964.

See also 273 Ala. 625, 143 So.2d 633.

Alvin B. Foshee, Clanton, for appellant.

**628**

Omar L. Reynolds and Reynolds & Reynolds, Clanton, for appellees.

HARWOOD, Justice.

This is an appeal from a decree denying complainant-appellant's prayer for specific performance of an alleged contract to purchase real estate, finding and decreeing that $750 was a reasonable yearly rental for the years 1961 and 1962, and from that further part of the decree awarding the appellant the sum of $363.71 for improvements made by the appellant upon the said real estate, and which the appellant claims was an inadequate award under the evidence. While there are additional findings and adjudications under the decree, they are not pertinent to this review.

The record in this case is rather voluminous. The evidence presented by the respective parties and their witnesses is in hopeless conflict. A better understanding of the case can probably be had from the following background.

On 6 March 1954, Mrs. Willie Ada Deason, a sister of Rubye Cox Williams (Mrs. J. D. Williams), one of the appellees herein, executed a deed to J. D. Williams and wife, Rubye Williams, conveying to them the 60 acres here involved. The recited consideration was $5.00 cash and execution of a purchase money mortgage for $3,500, payable in annual installments of $500 each.

This mortgage debt is unpaid except for $250.00.

Thereafter Mr. and Mrs. Williams lived on the 60 acres for a few years, and then moved into Clanton where Mr. Williams operated a filling station.

The complainant below, Fritz P. Owens, is the nephew of J. D. Williams. On 12 February 1959, Fritz P. Owens and his wife moved onto the 60 acres in question, and for two years he operated a peach orchard thereon. It was Owens' contention that he was on the premises as vendee of J. D. Williams. It is the contention of Rubye Cox Williams and the other appellees that he was on the premises as an annual lessee of Mrs. Williams, J. D. Williams having died on 28 October 1958.

On 20 December 1960, Rubye Cox Williams filed an unlawful detainer suit in the county court of Chilton County, Alabama, against the complainant seeking to recover possession of the premises in question. The next day the complainant filed a bill alleging among other things that a contract was entered into by J. D. Williams, deceased, and the complainant, in the month of January 1956, whereby J. D. Williams had sold to the complainant the land in question for the sum of $6,000, at which time the complainant had paid to J. D. Williams the sum of $500 on the purchase price of the land, and the said J. D. Williams had agreed to accept the balance of said purchase price in payments of $500 per year with interest at 6 per cent. The complainant further averred that J. D. Williams surrendered possession of the land to complainant and that Henry Carroll, a tenant of the complainant, occupied the land during the year 1958, and that the complainant moved upon the property in 1959, and has been in possession since that time.

After the filing of the original complaint demurrers thereto were overruled and an appeal was taken to this court from that ruling. The judgment overruling the demurrer was reversed by this court essentially on the grounds that the allegations in the bill for specific performance of the contract to sell land merely stating that the husband and wife had executed · a deed, without more, was not sufficient to show that the wife was a party to the contract. The court observed that it not being alleged that the wife was a party to the contract to sell, she could not be compelled to convey her dower interest, and that it was not made clear on what basis the complainant sought specific performance as against the widow of J. D. Williams. (See Williams v. Owens, 273 Ala. 625, 143 So.2d 633.)

Upon remandment the bill was amended and the Peoples Savings Bank, Inc., as a holder of a mortgage on the land in question, and Walter C. Hayden, Administrator Ad Litem of the estate of J. D. Williams, were brought in as additional respondents. Also, on her motion Willie Ada Deason was permitted to intervene as holder of an unrecorded purchase money mortgage in the amount of $3,500, executed by J. D. Williams and Rubye Cox Williams at the time they purchased the land from her in 1954. No useful purpose would be served in discussing the pleading aspect of this case, since we are clear to the conclusion that on elementary principles the decree below is due to be affirmed.

In the proceedings below the introduction of the evidence, particularly that of the complainant, took a wide range. Clearly, and to a substantial degree, much of it was inadmissible under the provisions of Section 433, Title 7, Code of Alabama 1940, the so-called "Dead Man's Statute." However, as provided by Section 372(1), Title 7, Code of Alabama 1940, we will assume that the court below considered only relevant, material, competent and legal evidence, particularly in view of the agreement made between the attorneys during the trial that objections would be considered as interposed to the questions violating Section 433, Title 7, supra.

In view of the state of the record our task of review has been rendered rather tedious in attempting to separate the inadmissible evidence, which we cannot con-

sider, and which we presume the court did not consider, from that which is properly admissible. We think, however, that a fair summary of the tendency of the evidence is as follows.

The evidence presented by the complainant tends to show that on 3 January 1957, the complainant and J. D. Williams entered into an agreement whereby the complainant was to purchase the 60 acres in question. The conversation allegedly was in the presence of the complainant's mother and brother. It is clear that the complainant was to finance his purchase of the land by a proposed loan from the Federal Land Bank. Mr. Eugene Williams, a brother of J. D. Williams, and uncle of the complainant, testified that J. D. Williams had told him of the trade.

"The way I understood it, it was the agreement between him and Pat" (the complainant) "that if Pat didn't raise the balance of the money in other words, there wasn't no papers fixed or anything at that particular time and if Pat didn't raise the balance of the money that this would be worked out as rental."

Eugene Williams understood that the purchase price was to be $6,000 or $6,500.

Mrs. Gayda Mae Owens, the mother of the complainant, testified that she was present at the trade and that the complainant paid J. D. Williams $500 and was to pay the balance at $500 a year or more if he could. There was nothing said about any interest to be paid.

Mrs. Owens further testified that the complainant while living with her had made entries on the fly leaf of his high school annual as to the payments made by the complainant to J. D. Williams on the place, and that these entries reflected that the complainant had paid $1,015 to J. D. Williams on the place, and that J. D. Williams had told her prior to his death that the complainant had paid him that much.

Mrs. Owens further testified that J. D. Williams at the time of the trade had said that he had leased the premises to Mr. Henry Carroll for another year (1958) and that Carroll was to set out some peach trees as payment for the rent, and the complainant agreed to this.

John Earl Williams, a brother of the complainant, testified that he was present at this transaction and that J. D. Williams told the complainant he could pay $500 a year on the place but that no time of payment was fixed. The complainant gave to J. D. Williams a check for $400 which, according to John Earl, was later lost by J. D. Williams in a crap game.

The above conversation or conversations occurred at the filling station operated by J. D. Williams. It appears from complainant's evidence that the complainant and his mother and Mr. and Mrs. J. D. Williams then went to the office of Mr. A. B. Foshee where a deed was drawn up and signed by Mr. and Mrs. Williams conveying the 60 acres to the complainant. However, this deed was never delivered to the complainant, apparently for the reason that the complainant's efforts to borrow money from the Federal Land Bank were unsuccessful.

In reference to the payments, over the amount of the down payment of $500, which the complainant contended was paid to J. D. Williams, the complainant could produce no receipts for the payments and claimed they were made by cash or by payment for peach trees which had been ordered by J. D. Williams.

For the respondents, Mrs. J. D. Williams testified that her husband had told her in January 1957 that the complainant wanted to buy the 60 acres for $7,800. She went to the office of Mr. Foshee and there signed a deed for the land. Later her husband told her that the complainant could not get up the money and about six weeks later he gave the deed to her. Since that time the deed has been lost.

Mrs. Williams further testified that at no time between January 1957 and the death of her husband in October 1958, did the complainant enter into or in any wise

exercise any possession over the land in question. In January 1959, the complainant rented the 60 acres from her on the basis that she was to pay or furnish one-half of the baskets used in harvesting the peach crop, and she was to furnish the spray, and the complainant was to cultivate the peaches, harvest them and they were to divide the proceeds. Under this agreement the complainant paid to her on 14 September 1959 the sum of $550 as her share of the proceeds of the sale of the peach crop for that year. The complainant never furnished her any accounting of the operation for 1959.

She renewed the lease with the complainant for 1960 on the same basis but told the complainant that she wanted him to keep better accounts than he had the previous year. On 27 June 1960, the complainant, upon her third demand, paid her $810.15 as her part of the peaches that had been harvested up to that time. Mrs. Williams testified that a good part of the peaches were yet to be harvested and that 1960 was a fine year for peaches. However, no other payments were made by the complainant and he claimed that the rains had made the rest of the harvest worthless.

On the check for $550 there is written "Payment on place," and on the $810.15 check there is written "Paid on place." Mrs. Williams testified that no such legend appeared on either check at the time she received them and the complainant admitted that these legends had been placed on the checks after they had been processed through the bank, either by himself or his wife. In the trial below, however, he insisted that these checks represented payments on the purchase price of the land pursuant to the agreement between himself and J. D. Williams.

Mrs. Williams further testified that at no time from January 1957, up until the date of the filing of the bill below, on 21 December 1960, had the complainant claimed or made known to her in any way that he had purchased the land from J. D. Williams.

The evidence further shows that subsequent to 3 January 1957, the date of the alleged verbal agreement to sell, and prior to his death on 28 October 1958, J. D. Williams and Mrs. Williams renewed, with an increase in the indebtedness, a mortgage previously given to them by the Peoples Savings Bank, Inc., of Clanton, and that during this period he also made an application to the Federal Land Bank for a loan to be secured by the 60 acres in question.

The evidence further shows that the complainant has never assessed the land in question for taxation, but that the assessment has continued to be in the name of J. D. Williams and Rubye Cox Williams. Mrs. Williams testified she had paid taxes on the land every year since her husband's death except for 1961. When she attempted to pay the taxes for that year, she was informed someone had already paid them. The complainant testified he had paid the taxes for 1961, and maybe one other year, but was uncertain as to what year.

The record shows that on 7 March 1961, the original bill in this proceeding having been filed some three months earlier, the parties entered into an agreement whereby the complainant would deposit the sum of $750 with the Register pending the outcome of this suit for specific performance; that in event the respondents should prevail the sum would be applied toward the payment of a reasonable rental of the land for the crop year of 1961, and if the complainant should prevail the deposit would be applied on the purchase price of the land.

On 8 March 1961, this agreement was amended to provide that the respondents should have the right in the future to apply to the court to have the complainant deposit additional monies with the Register for the rent of the premises for the year 1961, should it appear that the original deposit of $750 was insufficient.

Following the court's original ruling on the demurrer to the bill, an appeal was perfected from such ruling and decree on 17 July 1961, and the judgment of reversal in

the appeal was rendered on 21 June 1962. (Williams v. Owens, 273 Ala. 625, 143 So. 2d 633.)

Pursuant to this agreement, and pending the appeal, the respondents filed a motion seeking to require the complainant to deposit additional funds with the Register, in that complainant had refused to itemize alleged expenses incurred by him in producing the peach crop on the lands in question.

The complainant, appearing specially, moved to strike the motion on the grounds that the lower court was without jurisdiction in the matter because the appeal on the ruling on demurrer was pending in this court.

The lower court denied the motion to strike, and ordered the complainant to deposit an additional $750 with the Register.

This action by the court is the basis of appellant's assignments of error 1 and 2.

The order requiring the deposit of an additional $750 with the Register to protect the rights of the parties pending the appeal from the ruling on demurrer could not, in any contingency, possibly affect the appellant. See Moore v. Randolph, 52 Ala. 530. After an appeal is taken the trial court loses jurisdiction of the matter or question which is embraced in the order appealed from. Lewis v. Martin, 210 Ala. 401, 98 So. 635. As stated in Barran v. Roden, 263 Ala. 305, 82 So.2d 398:

"The rule is stated to be that after an appeal is taken, the lower court 'may proceed in matters which are entirely collateral to that part of the case which is taken up (by the appeal) but it can do nothing in respect to any matter or question which is involved in the appeal, and which may be adjudged by the appellate court.' This is a limitation on the rule that after an appeal is taken the trial court cannot, pending that appeal, pass upon any matter involved on the appeal. Francis v. Scott, 260 Ala. 590, 72 So.2d 93; Gibson v. Edwards, 245 Ala. 334, 16 So.2d 865, and cases cited in them.

"As to those matters which are entirely collateral to the questions involved on appeal, the court and parties are free to proceed notwithstanding the appeal if taken, or without affecting the right to appeal if not then taken. 4 C.J.S., Appeal and Error, § 212(e), p. 401.

"A temporary injunction operative to preserve a status pending an appeal is not unusual. Browning v. Wesco Co., 218 Ala. 544, 119 So. 660. An order is frequently made pending an appeal for the payment of temporary alimony in an exercise of discretion by the court. Ex parte Spafford, 199 Ala. 309, 74 So. 358."

■ Clearly the matter of requiring the additional deposit was collateral to the subject matter of the appeal, and the lower court properly assumed jurisdiction in the premises. No merit therefore attaches to assignments 1 and 2.

Assignment of error 3 asserts error in the rendition of the decree.

■ In suits for specific performance merely persuasive evidence is fatal to the relief prayed. The complainant's case must be established by evidence that produces a clear conviction in the judicial mind, and in such cases courts cannot grope their way on inconclusive probabilities. Tilley, Ala. Eq.Pl., Section 343, and cases cited.

■ In the present case the testimony of the complainant and his witnesses is in many instances equivocal when viewed in light of the probabilities of the situations. On the other hand, the evidence presented by the respondents is clear and convincing. From the decree rendered the court below apparently was so impressed. Not only was the decree of the lower court merely justified under the evidence, but we think it was compelled. No merit attaches to assignment of error 3.

Assignment of error 4 asserts error in the denial of specific performance of the

contract. What we have written above in connection with assignment of error 3 is equally applicable here.

Further, the bill prayed that respondents be ordered to convey the entire 60 acres to the complainant.

■■ While the bill as amended asserts that J. D. Williams and the respondent, Mrs. Williams, signed a deed conveying the 60 acres to the complainant, this without more is insufficient to show that Mrs. Williams was a party to the verbal contract allegedly made between J. D. Williams and the complainant. Williams v. Owens, supra. Mrs. Williams, in addition to being the widow of J. D. Williams, and therefore entitled to a dower interest in the lands of her deceased husband, was also a joint tenant in the 60 acres. The bill as amended still relies upon the verbal contract of J. D. Williams. Mrs. Williams was not a party to this contract. The complainant was clearly not entitled to specific performance, for to do so would require Mrs. Williams to perform a contract to which she was not a party. Jones v. McGivern, 274 Ala. 232, 147 So.2d 813; Williams v. Owens, supra.

■ Several of appellant's assignments of error relate to the court's conclusions that $750 per year was a reasonable rental value of the premises for the years 1961 and 1962. There was evidence before the court, particularly the testimony of J. C. Hayes, and of Mrs. Williams, supporting the court's findings in this regard. These assignments are without merit.

The remaining assignments of error assert as error the inadequacy of the award to the complainant of $363.71 for improvements placed on the land by the complainant.

The decree does not enlighten us as to how the court arrived at this figure. We do not think, however, that the complainant is in position to complain, for the court could well have refused him any award.

This for the reason that even under the complainant's own evidence, the contract was void under our statute of frauds.

■ By the terms of Section 3(6), Title 20, Code of Alabama 1940, every verbal contract for the sale of land or any interest therein is void unless the purchase price or a portion thereof be paid *and the purchaser be put in possession of the land by the seller*.

Payment of the purchase price, or a part thereof, and possession by the vendee under the warrant of the vendor must concur, though the two need not be contemporaneous.

The undisputed evidence shows that Henry Carroll occupied the premises in 1956 as tenant of the Williamses. The complainant claimed that the verbal agreement was made with J. D. Williams on 3 January 1957. The complainant testified that Carroll occupied the premises during 1957 as tenant of J. D. Williams, and he, complainant, did nothing on the place during 1957 as he was working away from Clanton.

As to 1958, the complainant testified he may have pruned some peach trees in the latter part of that year, as "You usually start" (pruning) "around in October."

In this connection Mrs. Williams testified that Carroll had been a tenant on the land in 1957, and the lease had been renewed for 1958, the consideration being the setting out of peach trees on the place.

Mrs. Owens, mother of complainant, testified that complainant did not move on the premises until February 1959 as "J. D. had traded with Mr. Carroll."

■ The above evidence shows clearly that in 1957 and 1958, the premises were in the possession of Carroll as tenant of J. D. Williams, and that the complainant was never put in possession of the same by his vendor, nor could he have been in view of the lease held by Carroll. There was no evidence tending to show any attornment of Carroll to the complainant, and he remained on the land as tenant of J. D. Williams.

Mack v. Beeland Bros. Mercantile Co., 21 Ala.App. 97, 105 So. 722. Thus one of the essential elements to remove the transaction from the statute of frauds (i. e., being put in possession by the seller) was lacking, and the purported verbal agreement to sell the land was void. This being so, the court could have justifiably withheld any award to the complainant for alleged improvements. Particularly is this true in view of the vague evidence presented by complainant to establish the nature and value of the alleged improvements.

The court did, however, allow the complainant $363.71 as above mentioned. There is no basis for holding this award to be inadequate. On the other hand, the appellees have not cross appealed or questioned this award. We therefore will not disturb this portion of the decree.

The decree is due to be affirmed in every aspect, and it is so ordered.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and MERRILL, JJ., concur.