Thomas E. Reynolds, the interim Chapter 7 bankruptcy trustee for Jefferson Screening, Inc.; Laguna Resources, Inc.; and Black Creek Land and Minerals, Inc. (hereinafter referred to collectively as "the debtors"), appeals from the trial court's orders of condemnation of interpleaded funds and its award of attorney fees and expenses in favor of the garnishment liens of Colonial Bank; Komatsu Financial, L.P.; General Electric Capital Business Asset Funding Corporation; Brad Regan, Inc.; the law firm of Friedman, Leak Bloom, P.C. ("Friedman"); and the law firm of Tweedy, Jackson, Beech and Fikes, P.C. ("Tweedy"). Derrell Chamblee and Scott Chamblee, former employees of Jefferson Screening, are also named as appellees.
 I. Factual and Procedural History
The debtors were the plaintiffs in a fraud action against Seminole Electric Cooperative, Inc. On May 3, 2000, after the commencement of the debtors' action, Colonial Bank sued both the debtors and Seminole, claiming that the debtors had defaulted on their loans with Colonial Bank because of Seminole's alleged failure to honor its contracts to purchase coal from the debtors. Colonial Bank's action was consolidated with the debtors' action against Seminole.
On October 12, 2000, the trial court entered a summary judgment in favor of Colonial Bank for its claims against the debtors in the amount of $7,446,363.16. The judgment was made final pursuant to Rule 54(b), Ala.R.Civ.P. The debtors did not appeal the summary judgment against them. The debtors assigned to Colonial Bank any potential recovery in their fraud action against Seminole, and, in return, Colonial Bank agreed to seek recovery of the debtors' indebtedness only from the proceeds recovered, if any, in the debtors' fraud action against Seminole. The trial court entered an order of attachment in favor of Colonial Bank charging with payment of Colonial Bank's judgment any monetary judgment recovered by the debtors against Seminole, subject to any liens held by the debtors' attorneys. Colonial Bank dismissed its action against Seminole.
The debtors' remaining claims against Seminole were tried before a jury. On June 26, 2001, the jury returned a verdict in favor of the debtors against Seminole in the amount of $22,196,899.69. Colonial Bank, along with Komatsu, General Electric, and Brad Regan, other creditors of the debtors, served their writs of garnishment on Seminole. Friedman and Tweedy also asserted their claims for attorney fees related to the services they provided for one of the debtors, Jefferson Screening.
Seminole subsequently appealed the trial court's judgment for the debtors on their fraud claim. On September 9, 2002, while that appeal was pending before this Court, the debtors and Seminole executed a "Release and Settlement Agreement"[1] settling the debtors' judgment against *Page 500 
Seminole for $6,900,000. To protect itself from competing claimants, Seminole filed a complaint for interpleader of the funds pursuant to § 6-6-463, Ala. Code 1975, and Rule 22, Ala.R.Civ.P. Seminole paid the interpleaded funds to the trial court so the trial court could determine the proper distribution of the funds among the competing claimants. The debtors answered the interpleader complaint and disclaimed any entitlement to the proceeds of the interpleaded funds.
On September 11, 2002, again while the appeal was still pending before this Court, the trial court conducted a hearing at which the debtors, Seminole, and Colonial Bank were present. The trial court entered an order condemning the $6,900,000 settlement amount; that order stated:
 "Therefore, it is hereby ordered, adjudged, and decreed as follows:
 "1. The $6.9 million settlement amount tendered and paid into court by Seminole Electric Cooperative, Inc. is hereby condemned in its entirety.
 "2. The settlement amount, net of any partial distribution that may be approved by this Court in order to satisfy the attorneys' liens for reasonable fees and expenses shall be held pending further order of this Court subject to the claimants' garnishment liens.
 "3. That the charging order entered by this Court on April 4, 2001, in favor of Colonial Bank and the garnishment liens of Colonial Bank, Komatsu Financial, L.P., General Electric Capital Business Asset Funding Corp., and Brad Regan, Inc. shall attach to the Court in the order of priority as determined by this Court after notice and hearing.
 "4. The Clerk of the Court is directed to serve Colonial Bank, Komatsu Financial, L.P., General Electric Capital Business Asset Funding Corp., and Brad Regan, Inc. with the Complaint for Interpleader filed in this action by Seminole Electric Cooperative, Inc. and a copy of this Order. Each garnishor is directed to file an Answer establishing its claim to and priority in the interpled funds within 30 days hereof."
The trial court also approved the payment of attorney fees and litigation expenses pursuant to the employment contract Friedman and Tweedy had with Jefferson Screening.[2] The trial court stated:
 "It is Therefore, the Order, Judgment and Decree of this Court as Follows:
 "1. The petition of [Friedman] and [Tweedy] as to [their] attorney fees is hereby granted as reasonable and the Court finds that [Friedman] and [Tweedy] receive as its attorney fees forty percent of the gross amount of the settlement for a total of $2,760,000.00.
 "2. The petition of [Friedman] and [Tweedy] as to the expenses incurred in connection with the prosecution is granted. The expenses are found to be reasonable and necessary, in the sum of $964,833.70 and are approved based on the findings contained in this order.
 "3. The Court has been advised that [Friedman] and [Tweedy] have arrived at a split of the monies due them for their attorney fees and expenses and so approves said split.
 "4. The Clerk is ordered to instanter pay to the firms of [Friedman] and [Tweedy] the sum of $2,974,833.70 as their total amount of attorney fees and *Page 501 
reimbursement of expenses owed herein. The sum of these numbers represents the payment of 40% of the gross amount of the settlement plus approved expenses.[3]
 "5. The Clerk is ordered to instanter pay to Scott Chamblee the sum of $350,000.00; to Derrell Chamblee the sum of $400,000.00.
 "6. The money remaining in the clerk's office after the payment of these fees and expenses as set out hereinabove is to be held by the clerk until further order of this court.
 "7. Seminole Electric Cooperative, Inc., . . . is forever released from any further liability in this case and the judgment against it shall be marked satisfied by the clerk."
The trial court also entered an order sealing the record in the case.
On September 11, 2002, the same date the trial court entered its orders, the parties filed a joint motion with this Court asking us to remand Seminole's appeal of the underlying fraud action. Not until two days later, on September 13, 2002, did this Court remand Seminole's case for proceedings consistent with the release and settlement agreement. Consequently, the trial court's hearing took place and its orders were entered while Seminole's appeal was pending before this Court.
On September 13, 2002, the same date this Court remanded Seminole's case, General Electric, Cumberland Casualty and Surety Company, and Regions Bank[4] filed petitions of involuntary bankruptcy against the debtors. Reynolds was appointed as interim bankruptcy trustee.[5] On September 26, 2002, approximately 15 days after the trial court entered its orders, this Court dismissed the appeal on Seminole's motion.
On October 23, 2002, Reynolds appealed the trial court's condemnation order and its award of attorney fees and expenses. The named appellees are Colonial Bank, Komatsu, General Electric, Brad Regan, Friedman, Tweedy, Derrell Chamblee, and Scott Chamblee.[6]
 II. Standard of Review
Reynolds's appeal focuses on the application of the law to the facts. Reynolds claims that the facts are uncontested; Colonial Bank, Friedman, and Tweedy claim that Reynolds omits pertinent facts and that he mischaracterizes the record. *Page 502 
We find that the facts applicable to the issues presented are undisputed, and that, therefore, "no presumption of correctness is accorded to the trial court's judgment" and "we review denovo the application of the law to the facts of this case." AllstateIns. Co. v. Skelton, 675 So.2d 377, 379 (Ala. 1996); Beavers v. County ofWalker, 645 So.2d 1365, 1372 (Ala. 1994). Because we find that the trial court lacked jurisdiction to enter its condemnation order and to award attorney fees and expenses, we pretermit a discussion of Reynolds's claim that the interpleader notices to the creditors were insufficient.
 III. Analysis
Reynolds argues that the trial court could not recognize or enforce the parties' settlement agreement without the consent of this Court because, he argues, the trial court was divested of its jurisdiction while Seminole's appeal was pending before this Court. According to Reynolds, only "collateral" matters remained within the jurisdiction of the trial court. See Foster v. Greer Sons, Inc., 446 So.2d 605, 608 (Ala. 1984) (overruled by Ex parte Andrews, 520 So.2d 507 (Ala. 1987), to the extent Foster held that filing a notice of appeal ousts the trial court of jurisdiction to consider a timely filed postjudgment motion).
Colonial Bank claims that Reynolds's jurisdictional argument is without merit because it obtained a judgment against the debtors that was made final pursuant to Rule 54(b), Ala.R.Civ.P., and that was not on appeal when the trial court's orders were entered. Colonial Bank claims that the trial court's orders were not only "collateral" to Seminole's pending appeal — they were not even a part of Seminole's appeal. Colonial Bank states that "[t]he trial court has taken no action that could prejudice any claimant's right to establish its claim to the interpled funds (only attorneys' fees and expenses were disbursed, which no competing creditor should [claim] in any event) and, even if prejudicial, these claimants have filed no appeal." Colonial's brief at p. 20.
Friedman and Tweedy argue that after the parties agreed to the settlement "[t]he only action taken by the [trial court] was approving the [debtors'] attorneys' motion for attorneys fees and the approval of payment of litigation expenses including payments to representatives of the [debtors] for extensive amounts of time expended over four years in the litigation." Friedman and Tweedy's brief at p. 28. Friedman and Tweedy argue that once the parties reached the settlement agreement, Seminole's payment of the funds to the trial court and the trial court's disbursement of such funds were "collateral" to any issue on appeal.
The question of jurisdiction is fundamental. Mobile Gulf R.R. v.Crocker, 455 So.2d 829, 831 (Ala. 1984). "'[I]f there is an absence of jurisdiction over either the person, or the subject matter, a court has no power to act, and jurisdiction over the subject matter cannot be created by waiver or consent.'" Mobile Gulf R.R., 455 So.2d at 831 (quoting Norton v. Liddell, 280 Ala. 353, 354, 194 So.2d 514, 517
(1967)). See also Rinehart v. Reliance Life Ins. Co. of Georgia,272 Ala. 93, 128 So.2d 503 (1961); Dickinson v. Cosmos Broad. Co.,782 So.2d 260 (Ala. 2000). In Wilkinson v. Henry, 221 Ala. 254, 256,128 So. 362, 364 (1930), this Court stated:
 "The question of jurisdiction is always fundamental. It would amount to usurpation and oppression for a court to interfere in a matter over which it has no jurisdiction, and its pronouncements in respect thereto would be without force, and its decrees and judgments *Page 503 
would be wholly void. This is a universal principle, as old as the law itself; hence the question of jurisdiction is a question of primary importance in every case, and, if there is an absence of jurisdiction over the subject-matter, this ends the inquiry; it cannot be waived or supplied by consent."
(Emphasis added.)
Jurisdiction of a case can be in only one court at a time. Ex parteState ex rel. O.E.G., 770 So.2d 1087, 1089 (Ala. 2000). Therefore, while an appeal is pending, the trial court "can do nothing in respect to any matter or question which is involved in the appeal, and which may be adjudged by the appellate court." Foster, 446 So.2d at 608. Although the general rule is that a trial court is divested of its jurisdiction during a pending appeal, a trial court may proceed in matters that are entirely "collateral" to the appeal. See Owens v. Williams, 276 Ala. 627,165 So.2d 709 (1964); Osborn v. Riley, 331 So.2d 268 (Ala. 1976); Barranv. Roden, 263 Ala. 305, 82 So.2d 398 (1955).
Colonial Bank claims that Reynolds, as bankruptcy trustee, cannot object on appeal to the trial court's orders because the debtors did not object to the orders before the trial court. However, Reynolds's objection raises a purely jurisdictional issue, and the absence of jurisdiction may be raised for the first time on appeal. Mobile Gulf R.R., 455 So.2d at 832; International Longshoremen's Ass'n v.Davis, 470 So.2d 1215 (Ala. 1985). Therefore, the issue presented before this Court is whether the trial court's order condemning the settlement amount and its award of attorney fees and expenses were "collateral" to the pending appeal so that the matter was properly within the jurisdiction of the trial court.
Reynolds acknowledges that a trial court may proceed in matters that are "collateral" to a pending appeal. See Owens, 276 Ala. at 632,165 So.2d at 714. For example, in Owens the appellees filed a motion in the trial court seeking an additional deposit to apply toward the rent of the premises in question pursuant to a previously entered agreement between the parties. 276 Ala. at 632, 165 So.2d at 714. The motion was filed while an appeal seeking specific performance of a contract to purchase the premises in question was pending before this Court. 276 Ala. at 628,165 So.2d at 710. The trial court granted the motion and required the appellant to pay an additional deposit in order to protect the parties' interests while the case was pending on appeal. 276 Ala. at 632,165 So.2d at 714. The appellant argued that the pending appeal divested the trial court of jurisdiction. 276 Ala. at 632, 165 So.2d at 714. This Court disagreed and held that the additional deposit was collateral to the subject matter of the appeal, and that, therefore, the trial court properly assumed jurisdiction. 276 Ala. at 632, 165 So.2d at 714.
Moreover, in Osborn, supra, the appellees filed a motion in the trial court for an additional supersedeas bond after the appellants had filed an appeal of the trial court's judgment declaring the deed in question to be void. 331 So.2d at 270. This Court concluded that the appellees' motion was properly within the jurisdiction of the trial court because it merely protected the appellees' interest in the trial court's order entered in their favor and did not involve the "rights and equities" relative to the question on appeal. 331 So.2d at 272. This Court stated that the "motion presented a question which [was] clearly collateral to the questions raised by [the] appeal of the court order setting aside the deed." 331 So.2d at 272. See also Barran v. Roden, 263 Ala. at 307,82 So.2d at 399 ("As to those matters which are entirely *Page 504 
collateral to the questions involved on appeal, the court and parties are free to proceed notwithstanding the appeal if taken, or without affecting the right to appeal if not then taken.").
Reynolds claims that the trial court's orders in the present action, unlike the orders in Owens and Osborn, which protected the interests of the parties pending the appeal of the matters in question, directly affected the matters on appeal. Reynolds argues that the present action is more similar to that presented in Ex parte Elmore, 585 So.2d 921
(Ala. 1991). We agree. In Elmore, both Elmore and Hays were granted joint custody of their two children, with Hays having physical custody, subject to Elmore's rights of visitation. 585 So.2d at 922. The trial court modified the visitation provision, allowing each parent alternating two-week periods with the children. 585 So.2d at 922. The Court of Civil Appeals reversed the order modifying visitation and remanded the case to the trial court for it to enter an order specifying Elmore's visitation periods. 585 So.2d at 922. This Court granted certiorari review and subsequently quashed the writ as having been improvidently granted. 585 So.2d at 922. However, while the case was pending before this Court, the trial court purported to enter an order in compliance with the Court of Civil Appeals' opinion. 585 So.2d at 922. This Court granted Elmore's petition for a writ of mandamus because the trial court was without jurisdiction to enter the order, stating the general rule that the trial court "can do nothing in respect to any matter involved on appeal that may be adjudged by the appellate court." 585 So.2d at 922.
In the appeal from the debtors' fraud judgment, Seminole raised numerous issues, including whether the trial court erred in failing to dismiss the promissory-fraud and suppression claims and whether the trial court failed to give Seminole's requested jury charges and to exclude certain evidence. Seminole also raised issues related to damages, including whether the compensatory-damages award was supported by the evidence, whether Jefferson Screening was entitled to punitive damages, and whether punitive damages should be capped at $250,000. While Seminole's appeal was pending, the trial court enforced a settlement, condemned the settlement amount, awarded attorney fees and expenses from the interpleaded settlement funds, and released Seminole from further liability in this case. As in Elmore, the trial court's orders directly affected the matters involved on appeal that could have been adjudged by this Court.
Colonial Bank argues that the trial court's orders were collateral to the pending appeal. It argues that Reynolds's "fatal omission" in his jurisdictional argument is the fact that Colonial Bank's antecedent final judgment against the debtors was not on appeal when the trial court entered its orders. Colonial Bank's brief at p. 30. We agree that Colonial Bank's judgment against the debtors was made final pursuant to Rule 54(b), Ala.R.Civ.P. However, while Colonial Bank's status as a judgment creditor of the debtors had been established, the judgment debtors' rights against Seminole were dependent upon the success of their action against Seminole — which was on appeal to this Court. For all that appears, the judgment against Seminole could have been reversed and a judgment rendered for Seminole, and Seminole would have had no obligation to the debtors or to Colonial Bank, as the assignee of the debtors. Of course, a settlement of which this Court is unaware, entered into before this Court's opinion in the case is released, could necessitate proceedings to set aside this Court's opinion so as to enforce the settlement. But that circumstance *Page 505 
does not alter the fact that the trial court's order enforcing, pursuant to the settlement agreement, a reduction of the amount of the judgment made the basis of the pending appeal directly rather than collaterally involved matters pending on appeal.
Friedman and Tweedy also argue that the trial court's orders were "completely collateral" to the issues presented in Seminole's pending appeal because, they say, the trial court merely approved attorney fees and litigation expenses. Friedman and Tweedy's brief at p. 34. Friedman and Tweedy cite Florida cases for the proposition that a trial court has jurisdiction to consider a motion for an assessment of attorney fees even after a notice of appeal from a final judgment has been filed. SeeCasavan v. Land O'Lakes Realty, Inc. of Leesburg, 526 So.2d 215
(Fla.Dist.Ct.App. 1988); McGurn v. Scott, 596 So.2d 1042 (Fla. 1992). However, even if we consider Florida authority as persuasive, it is clear that the trial court here went beyond a mere assessment of attorney fees and expenses. The trial court enforced and then condemned a settlement amount in order to disburse the funds to Friedman and Tweedy, and it released Seminole from further liability. Those actions are not collateral to the pending appeal because they involve the "rights and equities" affected by the matters presented on appeal. See Osborn, 331 So.2d at 272.
It is clear that the debtors as well as Seminole agreed to be bound by the release and settlement agreement. However, the parties' consent cannot confer jurisdiction on the trial court. See Wilkinson,221 Ala. at 256, 128 So. at 364. The trial court was divested of its jurisdiction to proceed on any matters that would affect the issues presented on appeal. The trial court lacked the jurisdiction to enter the orders because it could "do nothing in respect to any matter involved on appeal" that might have been adjudged by this Court. See Elmore, 585 So.2d at 922.
 IV. Conclusion
We reverse the trial court's orders and remand the case for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
MOORE, C.J., and HOUSTON, JOHNSTONE, and WOODALL, JJ., concur.
[1] The Release and Settlement Agreement was not made a part of the record.
[2] In its order, the trial court refers only to the contract Friedman and Tweedy had with Jefferson Screening. However, in their brief, Friedman and Tweedy stated that they also previously represented the debtors.
[3] We note that the sum of 40% of the gross amount of the settlement plus the approved expenses as stated in the trial court's order does not equal the amount approved as the total attorney fees and expenses awarded by the trial court.
[4] Cumberland Casualty and Regions Bank are not parties to the interpleader action and are not involved in this appeal.
[5] Colonial Bank filed a motion to dismiss the bankruptcy petition for lack of jurisdiction. This Court issued an order to show cause why it should not stay the proceedings in this appeal pending a decision by the bankruptcy court on Colonial Bank's motion to dismiss. Reynolds did not object to the issuance of a stay. Colonial Bank, Friedman, and Tweedy objected to the issuance of a stay, claiming that the resolution of the jurisdictional issues before the bankruptcy court depends upon the finality of this Court's decision regarding the application of state law to the trial court's orders. Based upon the parties' responses, we review Reynolds's claims despite the fact that Colonial Bank's motion to dismiss is pending in the bankruptcy court.
[6] On October 10, 2002, General Electric filed its answer to Seminole's interpleader complaint; it argued that the complaint should be dismissed because the proper forum was the bankruptcy court. On October 16, 2002, Komatsu filed a motion to dismiss in the trial court arguing that the trial court lacked jurisdiction to enter its orders.