Rel: April 14, 2023

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2022-2023

_____

### CL-2022-0687

_____

## J.T.

## v.

## Chambers County Department of Human Resources

_____

### CL-2022-0972

_____

## L.T.

## v.

## Chambers County Department of Human Resources

## Appeals from Chambers Juvenile Court
## (JU-19-53.03)

PER CURIAM.

In appeal number CL-2022-0972, L.T. ("the mother") appeals from a judgment terminating her parental rights to I.M. ("the child"), one of her three children; the Chambers Juvenile Court ("the juvenile court") entered that judgment in an action docketed as JU-19-53.03 ("the .03 action"). In appeal number CL-2022-0687, J.T. ("the maternal grandmother"), the child's maternal grandmother, appeals from an order of the juvenile court denying her motion to intervene in the .03 action, appeals from an interlocutory injunction that the juvenile court entered in the .03 action, and purports to appeal from the judgment terminating the mother's parental rights. We consolidated the appeals ex mero motu.

We dismiss the mother's appeal because the judgment from which she appeals is not a final one. We dismiss the maternal grandmother's appeal insofar as it challenges the denial of her motion to intervene because she did not timely file her notice of appeal with respect to that order, we dismiss her appeal insofar as she purports to appeal from the judgment terminating the mother's parental rights because the maternal grandmother does not have standing to appeal from that judgment, and we reverse the order granting an interlocutory injunction as to the

maternal grandmother because the juvenile court entered it without affording her due process.

<u>Background</u>

The mother, who was thirty-seven years old when the juvenile court tried this case on May 19, 2022, moved with the child from Georgia to Chambers County in January 2019. The child's father was a resident of Georgia before he died in December 2020. The mother gave birth to the child in April 2014, and the child was eight years old when the juvenile court tried this case. The mother has two other children that remained in Georgia when she moved to Alabama in 2019. Those children, who were fourteen and twelve years old when the juvenile court tried this case, have a different father than the child. They were living with the maternal grandmother in Georgia when this case was tried, although a court has not transferred custody to her.

The mother testified that Georgia's Family and Children Services ("FCS") in Cobb County, Georgia, became involved with her family in 2016, apparently because the mother was using illegal drugs. FCS in Cobb County removed the child from the mother's custody and gave her a case plan requiring her to submit to random drug testing, submit to a

3

drug-and-alcohol evaluation, comply with the recommendations made by the drug-and-alcohol evaluator, attend parenting classes, maintain stable housing, and maintain employment. FCS in Cobb County placed the child with the maternal grandmother from June 2016 until June 2017. However, the maternal grandmother did not want to be a long-term placement for the child, so FCS in Cobb County transferred the child to his maternal aunt's custody in June 2017. The mother testified that she had successfully completed the requirements of the case plan and that FCS in Cobb County had returned the child to her custody later in 2017.

The mother testified that, in January 2018, she relapsed into using illegal drugs, and FCS in Cherokee County, Georgia, removed the child from her custody. Subsequently, after the mother moved to Troup County, Georgia, FCS in Cherokee County transferred the child's case to FCS in Troup County. After the mother completed the requirements of her case plan in August 2018, FCS in Troup County returned the child to her custody.

The mother moved to Alabama in January 2019. In February 2019, FCS in Troup County asked the Chambers County Department of Human Resources ("DHR") to locate the mother and the child to

4

determine whether the mother needed further services because, FCS said, she had an ongoing child-protection case in Troup County.

DHR located the mother and the child in March 2019 and sent a caseworker to the mother's residence to check on the mother and the child. The caseworker asked to see the child, but the mother refused and started to close the door. The caseworker put her foot in the doorway to block the door. The mother threatened to punch the caseworker if she did not remove her foot from the doorway. The caseworker, who was pregnant, backed away and called law enforcement. Before a law-enforcement officer could arrive, however, the mother climbed out of a window with the child and fled.

In April 2019, DHR learned that the child had been in Georgia with his father for several weeks and that the child had returned to Chambers County. Caseworkers from DHR went to the mother's residence; however, she would not let them enter the residence. The caseworkers sought assistance from law-enforcement officers, who came to the mother's residence, arrested her, and charged her with resisting arrest and obstructing governmental operations. Law enforcement later dismissed those charges.

When the caseworkers entered the mother's residence following her arrest, they found that the mother did not have any food in the residence, that the residence did not have water service, and that the only source of electricity was the battery from the mother's automobile, from which someone had run a cable to the residence. Aside from the child, no one else was in the residence. DHR placed the child in foster care and, on April 16, 2019, commenced a dependency action ("the .01 action") regarding the child in the juvenile court. In August 2019, the maternal grandmother filed a motion to intervene in the .01 action, which the juvenile court granted on August 28, 2019.

DHR requested that FCS do a home study on the maternal grandmother pursuant to the Interstate Compact on the Placement of Children ("ICPC"), § 44-2-20 et seq., Ala. Code 1975. FCS did the home study and recommended that DHR not place the child with the maternal grandmother because, according to the FCS caseworker, the maternal grandmother did not have the capacity to protect the child from the mother, had demonstrated a lack of commitment to the child when she had custody of him in 2016 and 2017, had expressed her belief that child-

welfare authorities were corrupt, and may not cooperate with FCS in its efforts to ensure the child's safety and well-being.

The maternal grandmother subsequently asked FCS to reopen her home study. A representative of FCS contacted DHR, informed DHR that the maternal grandmother had requested that FCS reopen her home study, and informed DHR that FCS could not reopen the home study without a request from DHR. DHR did not request that FCS reopen the home study.

On April 8, 2020, after receiving FCS's home study regarding the maternal grandmother, DHR filed a motion asking the juvenile court to dismiss the maternal grandmother as a party to the .01 action. DHR sought to dismiss the maternal grandmother as a party because, DHR said, it could not place the child in the maternal grandmother's custody because, DHR said, FCS had recommended that DHR not place the child with the maternal grandmother and because, DHR said, the maternal grandmother had not visited the child or sought to visit the child since filing her motion to intervene in August 2019. On April 8, 2020, the juvenile court entered a judgment dismissing the maternal grandmother as a party to the .01 action. On April 15, 2020, the maternal grandmother

filed a postjudgment motion challenging her dismissal from the .01 action. Her postjudgment motion was denied by operation of law on April 29, 2020. On June 29, 2020, more than fourteen days after the denial of her postjudgment motion, the maternal grandmother appealed to this court from the judgment dismissing her as a party to the .01 action.

This court docketed the maternal grandmother's appeal from the judgment dismissing her as a party to the .01 action as appeal number 2190723. After calling for letter briefs regarding the timeliness of the maternal grandmother's notice of appeal, this court, on November 9, 2020, dismissed that appeal because the maternal grandmother had not timely filed her notice of appeal from that judgment. This court issued its certificate of judgment in appeal number 2190723 on December 4, 2020.

In the meantime, the maternal grandmother had commenced a dependency action regarding the child ("the .02 action") in the juvenile court. The record does not indicate what occurred in the .02 action.

On April 16, 2020, DHR commenced the .03 action seeking the termination of the mother's and the father's parental rights to the child. On October 30, 2020, the maternal grandmother filed a combined motion and pleading titled "Motion to Intervene, Petition for Termination of

Parental Rights and, in the alternative, Petition for Custody." The juvenile court treated the maternal grandmother's petition for termination of parental rights and petition for custody in that document as pleadings commencing a separate action, which the juvenile court docketed as the .04 action involving the child ("the .04 action"). On November 2, 2020, the juvenile court entered an order denying the maternal grandmother's motion to intervene in the .03 action on the ground that it was moot because, the juvenile court said, the maternal grandmother had commenced the .04 action seeking the termination of the mother's and the father's parental rights to the child and seeking custody of the child. The maternal grandmother did not file a notice of appeal from that November 2, 2020, order within fourteen days after the juvenile court entered it. As noted above, the father died in December 2020.

On April 8, 2021, the mother filed a motion to dismiss all the actions in the juvenile court involving the child because, she alleged, the juvenile court lacked subject-matter jurisdiction under Alabama's Uniform Child Custody Jurisdiction and Enforcement Act, § 30-3B-101 et seq., Ala. Code 1975, because, she said, the child had not lived in Alabama for six months

before DHR commenced the .01 action. She submitted an affidavit in support of her motion in which she testified that the child had lived in Georgia from his birth in April 2014 until January 2019, when she and the child had moved to Alabama. She further testified that the child had lived in Alabama less than six months when DHR commenced the .01 action on April 16, 2019. It appears that the juvenile court held the actions involving the child in abeyance pending a Georgia court accepting jurisdiction over the child.

The maternal grandmother subsequently commenced dependency actions regarding the child in the juvenile courts of three different Georgia counties: Cobb, Troup, and Cherokee. Each of those courts declined to exercise jurisdiction over the maternal grandmother's actions. On April 12, 2022, the Juvenile Court of Cherokee County, Georgia, not only declined to accept jurisdiction because it found that Cherokee County was not a convenient forum, but also ruled that the juvenile court in Chambers County, Alabama, was the most convenient forum and should adjudicate actions involving the child.

On April 14, 2022, the juvenile court set the .03 action for trial on May 19, 2022. On May 4, 2022, the maternal grandmother filed a motion

10

to consolidate the .03 and .04 actions for trial. On May 9, 2022, the juvenile court entered an order denying the maternal grandmother's motion to consolidate. The juvenile court noted that, if DHR prevailed on the termination-of-parental-rights claim it had pleaded in the .03 action, that adjudication would render the .04 action moot. On May 12, 2022, the maternal grandmother filed a motion asking the juvenile court to reconsider its May 9, 2022, order denying her motion to consolidate the .03 and .04 actions or, in the alternative, to reconsider its November 2, 2020, order denying her motion to intervene. On May 17, 2022, the juvenile court entered an order denying the maternal grandmother's motion to reconsider.

On May 18, 2022, after the mother and the maternal grandmother had appeared as guests on a program broadcast on the Internet ("the Internet program") and discussed the .03 action, DHR filed a motion to hold the mother and the maternal grandmother in contempt, to impose sanctions on them, and to issue an ex parte order directing the mother and the maternal grandmother not to make any further public statements about the .03 action. The motion was not verified and was not accompanied by a written certification by DHR's attorney stating the

11

efforts, if any, that had been made to give the mother and the maternal grandmother notice and the reasons supporting the claim that notice should not be required. Later on May 18, 2022, the juvenile court entered an order ("the May 18, 2022, order") in response to DHR's motion, without giving the mother or the maternal grandmother notice and without holding a hearing. In pertinent part, that order states:

"1. The mother and the [maternal] grandmother are hereby ordered to have no contact of any kind with [the Internet program], any representative of that [Internet program], or any person at all about this case, except their legal counsel and those with whom their legal counsel is [sic] allowed to work.

"....

"3. The court will set this for hearing on the motion of any party. Until the court orders otherwise, this order shall remain in full force and effect and shall be given broad application to protect the dignity of the Court and the privacy of this child.

"4. The Court will set a sanction hearing for things already done by separate order.

"5. Any violation of this order will meet immediate and strict action by the Court."

(Emphasis added.)

The juvenile court tried the termination-of parental rights claim in the .03 action on May 19, 2022. After each party had rested their case at

12

the trial, the juvenile court orally announced from the bench that it was going to terminate the mother's parental rights.

On May 23, 2022, the maternal grandmother filed a notice of appeal to this court in the .03 action. When the maternal grandmother filed her notice of appeal, no party had requested a hearing regarding the May 18, 2022, order, the juvenile court had not yet held a hearing regarding the sanctions referred to in the May 18, 2022, order, and the juvenile court had not entered a final judgment adjudicating DHR's termination-of-parental-rights claim in the .03 action.

On August 24, 2022, the juvenile court entered a written judgment terminating the mother's parental rights and vesting DHR with legal custody of the child. That judgment stated that the May 18, 2022, order "remains in place." That judgment did not adjudicate DHR's motion to hold the mother and the maternal grandmother in contempt and to impose sanctions on the mother and the maternal grandmother and stated that a hearing on those issues had not been set.

The mother filed a notice of appeal on September 6, 2022.

Analysis

The Maternal Grandmother's Appeal

13

The maternal grandmother first argues that the juvenile court erred in denying her motion to intervene in its November 2, 2020, order. " '[A] denial of a motion to intervene is always an appealable order.' " Jim Parker Bldg. Co. v. G & S Glass & Supply Co., 69 So. 3d 124, 130 (Ala. 2011) (quoting Farmers Ins. Exch. v. Raine, 905 So. 2d 832, 833 (Ala. Civ. App. 2004)). However, the maternal grandmother's notice of appeal did not invoke this court's jurisdiction to review the November 2, 2020, order denying her motion to intervene because she did not file it within fourteen days after the juvenile court entered that order. See Rule 4(a)(1), Ala. R. App. P. (providing that the time for appealing a judgment in a juvenile case is fourteen days); Rule 28(D), Ala. R. Juv. P. (same). The timely filing of a notice of appeal is jurisdictional. See R.P.M. v. P.D.A., 112 So. 3d 49, 51 (Ala. Civ. App. 2012). Rule 2(a)(1), Ala. R. App. P., provides that "[a]n appeal shall be dismissed if the notice of appeal was not timely filed to invoke the jurisdiction of the appellate court." Therefore, insofar as the maternal grandmother seeks review of the November 2, 2020, order denying her motion to intervene, we dismiss her appeal.

The maternal grandmother next argues that the juvenile court erred because, she says, as a relative of the child, she was entitled to a custodial preference that the juvenile court did not accord her. Apparently, the maternal grandmother is arguing that the juvenile court's judgment terminating the mother's parental rights is erroneous because, she says, the juvenile court did not accord her a custodial preference in making a custodial disposition of the child. "'One must have been a party to the judgment below in order to have standing to appeal any issue arising out of that judgment.'" Phoenix East Assoc., Inc. v. Perdido Dunes Tower, LLC, 295 So. 3d 1016, 1026 (Ala. 2019) (quoting Mars Hill Baptist Church of Anniston, Alabama, Inc. v. Mars Hill Missionary Baptist Church, 761 So. 2d 975, 980 (Ala. 1980)). The maternal grandmother does not have standing to appeal from the judgment terminating the mother's parental rights because the maternal grandmother was not a party to that judgment. Therefore, we dismiss the maternal grandmother's appeal insofar as she challenges the custodial disposition of the child in the judgment terminating the mother's parental rights.

15

Finally, the maternal grandmother argues, among other things, that the juvenile court erred in entering the May 18, 2022, order restraining her from discussing the .03 action, except with designated persons, without affording her notice and an opportunity to be heard. The May 18, 2022, order did not resolve all the claims in the action; therefore, it was interlocutory. Generally, an appeal will lie only from a final judgment -- i.e., one that adjudicates all the claims and controversies between the parties. See Logan v. Logan, 40 So. 3d 721, 723 (Ala. Civ. App. 2009). However, "an interlocutory order granting an injunction is appealable." Ex parte State Dep't of Rev., 886 So. 2d 817, 819 (Ala. Civ. App. 2003). Moreover, "when '[a] nonparty ... has been enjoined by an order of the trial court,' he or she may appeal from that order." T.C.M. v. W.L.K., 208 So. 3d 39, 43 (Ala. Civ. App. 2016) (quoting D.F.H. v. J.D.G., 125 So. 3d 146, 149 (Ala. Civ. App. 2013)).

Neither the portion of DHR's motion requesting an "ex parte gag order" binding the maternal grandmother nor the trial court's order granting that motion set forth a statutory basis for such relief. We agree with the maternal grandmother that §§ 12-15-131, 12-15-138, and 12-15-141, Ala. Code 1975, do not support the issuance of the May 18, 2022,

16

order. Section 12-15-131 provides for the entry of an order "restraining the conduct of any party over whom the juvenile court has obtained jurisdiction," but the maternal grandmother was not a party to the .03 action. Moreover, that section requires notice and a hearing before entry of a restraining order, neither of which the juvenile court provided to the maternal grandmother. Section 12-15-138 authorizes a juvenile court to enter an ex parte order of restraint "to protect the health or safety of a child subject to the proceeding," but DHR's motion did not allege that such an order was necessary to protect the health or the safety of the child in this case. Section 12-15-141 authorizes a juvenile court to enter an ex parte order of restraint on an emergency basis "upon a showing of verified written or verbal evidence of abuse or neglect injurious to the health or safety of a child subject to a juvenile court proceeding and the likelihood that the abuse or neglect will continue unless the order is issued," but DHR's motion did not contain verified allegations that an ex parte order of restraint was needed to protect the child from abuse or neglect.[1]

---

[1]We recognize that § 12-15-133(g), Ala. Code 1975, subjects a person to criminal and civil sanctions for, among other things, disclosing information that "is directly or indirectly derived from the records of the

17

The juvenile court stated that it entered the May 18, 2022, order "to protect the dignity of the Court and the privacy of this child." Every court in Alabama has the authority to issue orders to prevent hindrance of its proceedings, § 12-1-7(1), Ala. Code 1975, and "[t]o control ... all other persons connected with a judicial proceeding before it in every matter appertaining thereto." § 12-1-7(4), Ala. Code 1975. Furthermore, a juvenile court may admit a person other than a party, such as a witness, to a juvenile court hearing "on condition that the persons refrain from divulging any information which would identify the child under the jurisdiction of the juvenile court or family involved." § 12-15-129, Ala. Code 1975. Assuming, without deciding, that the juvenile court relied on these statutes, or the general intent of the legislature that juvenile court records shall be confidential, see § 12-15-216, Ala. Code 1975, we find nothing in these statutes that authorizes the juvenile court to enter an ex parte gag order against a non-party to protect the dignity of the court or the privacy of a child.

---

juvenile court or acquired in the course of official duties," but that Code section does not specifically provide for the entry of an "ex parte gag order." Thus, the procedure for obtaining injunctive relief related to this Code section is provided by Rule 65, Ala. R. Civ. P., as discussed herein.

Turning to the general authority of a juvenile court to enter ex parte orders of restraint, in pertinent part, Rule 1(A), Ala. R. Juv. P., provides: "If no procedure is specifically provided in these Rules or by statute, the Alabama Rules of Civil Procedure shall be applicable in those matters that are considered civil in nature …." The .03 action is civil in nature, and no rule of juvenile procedure or statute governs the procedure for an ex parte order of restraint such as the one DHR sought in this case. Therefore, Rule 65, Ala. R. Civ. P., applies in the present case. See Ex parte S.L.P., [Ms. 2210005, Nov. 22, 2021] ___ So. 3d ___ (Ala. Civ. App. 2021) (applying Rule 65 in a juvenile action).

Rule 65(a)(1), Ala. R. Civ. P., provides: "No preliminary injunction shall be issued without notice to the adverse party." In pertinent part, Rule 65(b), Ala. R. Civ. P., provides:

> "A temporary restraining order may be granted without written or oral notice to the adverse party or that party's attorney only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required."

19

DHR did not adhere to the requirements for obtaining a preliminary injunction because it did not give the mother and the maternal grandmother notice of its motion seeking an order restraining them. See Rule 65(a)(1); Funliner of Alabama, L.L.C. v. Pickard, 873 So. 2d 198, 219 (Ala. 2003) ("Notice to the adverse party before a preliminary injunction is issued is mandatory, pursuant to Rule 65(a), Ala. R. Civ. P."). DHR also did not adhere to the requirements for obtaining a temporary restraining order because DHR did not file an affidavit by its attorney certifying to the juvenile court the efforts, if any, that had been made to give the mother and the maternal grandmother notice and the reasons supporting DHR's claim that notice should not be required. See Rule 65(b); Ex parte S.L.P., supra (holding that a juvenile court had erred in entering a temporary restraining order because the party seeking the temporary restraining order and his attorney had not complied with the requirements of Rule 65(b)). Accordingly, regardless of whether the May 18, 2022, order is characterized as a temporary restraining order or as a preliminary injunction, the juvenile court erred in entering it because DHR had not met the requirements for obtaining either. Therefore, we reverse the May 18, 2022, order to the extent it

20

purports to bind the maternal grandmother and remand the cause to the juvenile court.

The Mother's Appeal

Insofar as the juvenile court's August 24, 2022, judgment purported to maintain the May 18, 2022, order in effect, the August 24, 2022, judgment is void because the juvenile court no longer had jurisdiction over the May 18, 2022, order. See Johnson v. Willis, 893 So. 2d 1138, 1141 (Ala. 2004) (holding that the filing of a notice of appeal following the entry of a preliminary injunction deprived the trial court of jurisdiction to make the injunction permanent). The filing of the maternal grandmother's notice of appeal on May 23, 2022, deprived the juvenile court of jurisdiction over the May 18, 2022, order. "'[W]hile an appeal is pending, the trial court "can do nothing in respect to any matter or question which is involved in the appeal, and which may be adjudged by the appellate court."'" Id. (quoting Reynolds v. Colonial Bank, 874 So. 2d 497, 503 (Ala. 2003), quoting in turn Foster v. Greer & Sons, Inc., 446 So. 2d 605, 608 (Ala. 1984)). Because the maternal grandmother's notice of appeal invoked our jurisdiction to review the May 18, 2022, order, the juvenile court could take no action regarding

that order. The maternal grandmother did not have standing to appeal any issue pertaining to the termination of the mother's parental rights and, therefore, the juvenile court retained jurisdiction over DHR's termination-of-parental-rights claim despite the filing of the maternal grandmother's notice of appeal.

As noted above, the general rule is that an appeal will lie only from a final judgment that adjudicates all the claims and controversies between the parties. See Logan, supra. The August 24, 2022, judgment terminating the mother's parental rights was not a final judgment because it did not adjudicate DHR's pending contempt claim. See A.C. v. C.C., 34 So. 3d 1281, 1287 (Ala. Civ. App. 2009) (holding that the pendency of an unadjudicated contempt claim rendered a judgment finding a child dependent nonfinal and, consequently, dismissing the appeal from that judgment). Accordingly, we dismiss the mother's appeal.

## Conclusion

In summary, in the maternal grandmother's appeal, we reverse the juvenile court's May 18, 2022, order to the extent that it purports to bind the maternal grandmother, we remand the cause to the juvenile court,

and we dismiss all other aspects of the maternal grandmother's appeal.

We also dismiss the mother's appeal because she has appealed from a nonfinal judgment.

CL-2022-0687 -- APPEAL DISMISSED IN PART; REVERSED AND REMANDED.

Thompson, P.J., and Moore, Edwards, Hanson, and Fridy, JJ., concur.

CL-2022-0972 -- APPEAL DISMISSED.

Thompson, P.J., and Moore, Hanson, and Fridy, JJ., concur.

Edwards, J., concurs in the result, without opinion.